TALLADEGA COLLEGE et al., Appellants, v. J. LEONARD CALLANAN et al., Executors, Appellees.

**WILLS:** Testamentary Power—Authorizing Executors to Construe Will. A testator may validly constitute his executors the final arbiters to determine the meaning of his will and the amount due a legatee, and such decision will be *final* if it is rendered in regard to a matter in fair dispute, is not arbitrary, but on the contrary is in good faith, and based on reasonably plausible arguments arising out of the terms of the will and out of the facts and circumstances attending the settlement of the estate.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

MARCH 11, 1924.

THE plaintiff, as legatee under a will, claims from defend-

ants, as executors thereof, interest upon its legacy. The defendants denied its right thereto, under the terms of the will. The trial court sustained the position of the defendants, and entered order accordingly. Plaintiff appeals.—*Affirmed.*

*Parrish, Cohen, Guthrie & Watters,* for appellants.

*Charles Hutchinson,* for appellees.

EVANS, J.—The defendants are the executors of the will of James Callanan, who died in November, 1904. In form, the proceeding is one to construe the will. This will purported to dispose of an estate of the approximate value of $1,000,000. Approximately $800,000 ·was bequeathed in specific legacies. Among the legatees was the plaintiff, to which was bequeathed the sum of $100,000. The assets of the estate were not liquid. They consisted in the main of mining property, of indefinite values and of uncertain salability. The principal item of property consisted of $800,000 worth of stocks and·bonds of a mining company whose property consisted of an iron mine in Mexico, near the city of Durango. This company was controlled and operated by the decedent and his associates. Its operation included the operation of a blast furnace and foundry and machine shop. Shortly after the death of the decedent, the company became insolvent, and went into the hands of a Mexican receiver. The mortgage which secured the decedent's bonds was held invalid as a preference over other creditors. The property of the company was exposed for sale for the payment of debts, and was purchased by the executors, as the only method of protecting their interest. Revolution and war set in, and continued for many years in the locality of this property, during which time all the surface improvements of this mine were reduced to ashes. The result was that many, many years elapsed before the executors were able to convert into liquid assets sufficient of the property of the estate to pay the face of the legacies. No fault is charged against the executors. It is stipulated, in substance, that at all times they have acted with diligence and judgment for the best interests of the estate. The bequest to the plaintiff was in the following terms:

"Twenty-ninth. To the trustees and their successors in office, of Talladega College, an institution for the education of the colored people, located at Talladega, in the state of Alabama, the sum of one hundred thousand dollars ($100,000), to be paid in five annual payments, and to be used for the benefit of said college, and the education of, and teaching of trades to, the colored children of both sexes."

It is the contention of plaintiff that, under the terms of the foregoing, its legacy became absolutely due and payable within five years from the date of the death of the testator, and that it is entitled to 6 per cent interest upon all deferred payments made since such date. The actual payments made to plaintiff were as follows:

"December 28, 1905..................$20,000.00
November 20, 1906.................. 20,000.00
November 16, 1907.................. 10,000.00
December 28, 1912.................. 10,000.00
December 5, 1920................... 15,000.00
December 15, 1921.................. 15,000.00
June 1, 1922...................... 10,000.00"

In order to construe the foregoing bequest, account must be taken of other portions of the will, and particularly the following:

"Second. All my personal and real estate that I may own at my death, I give and devise to my executors hereinafter named, or such of them as shall qualify under this will, upon the trust and condition that they shall sell, convey and dispose of same as soon as they can conveniently obtain, in their judgment, a fair price for the same, from time to time, either in cash or on time, or partly both, but sell it all if they can without much sacrifice, in their opinion, within five (5) years after my death, and for that purpose I authorize and empower them to execute contracts and deeds and conveyances therefor, and to take security, if deeds are made, for the unpaid purchase money. I prefer they would not sell, but divide among my brother and sister, nephew and nieces my household goods, furniture, library, bedding, apparel, bric-a-brac, etc. And I direct my executors to divide and dispose of the proceeds of my other personal and

real estate; and to convey such real estate, if any real estate be left unsold, together with the personal property I may leave at my decease that may be unsold, and not divided, either in money, bonds, stock securities, or claims of every kind, to and among any part of the various persons, corporations and institutions hereinafter named, and in the proportion hereinafter named.* * *

"Forty-ninth.  I do hereby constitute and appoint Henry M. Rollins, C. A. Dudley of Des Moines, and my nephews, James Lincoln Callanan, now of Durango, Mexico, and James Leonard Callanan, of Des Moines, Iowa, executors of this my last will and testament, hereby revoking all former wills by me made. And I hereby authorize and empower my said executors to do and perform whatever may be necessary to carry into effect the provisions of this will and testament, according to the true intent and meaning thereof, and if any question of construction or meaning shall arise under this will, or any question of right or of dispute shall arise as to how much anyone is entitled to, I direct that the decision of a majority of my said executors on any such point shall be final.  And I further will and direct that if only a portion of the persons named as executors shall be living, or shall qualify as such executors, that such portion (provided that it is at least three) shall have full power and authority to act as my executors, and, in case any question shall arise upon which my said executors shall differ, that the act and decision of a majority of them shall be adjudged and taken to be the act and decision of my executors, or any one of said executors shall have a right to submit the question to the district court of Polk County, Iowa, and its decision shall be final. And, in case one or more of my executors die, or for any cause do not serve, I request the district court to appoint my friend, W. D. Skinner, or James A. McKinney, or both, of this city, to fill the vacancy, and such appointees shall have the same powers as if appointed by me.  And I further direct that the amount for services to be paid for attending to the execution and carrying out of this will by any and all the executors shall not exceed thirty thousand dollars ($30,000.00) in all, and shall not exceed five thousand dollars ($5,000.00) for each year, which sum is to be divided among them as they may agree, in proportion to the work done by each.  I desire the business to be closed up

and the executors discharged by the end of six (6) years, if it cannot be closed up sooner. * * *

"At the end of six (6) years from my death, if not sooner closed up, in all cases where any of the parties shall be living at that time to whom I have given annuities, or yearly or semi-annual payments, during their lives, I authorize and direct my executors to ascertain according to the Northampton tables, or in any other manner, the then value in a gross sum of money of such annuities separately, and to pay such value or gross sum to such parties in full for such annuities; and then I desire my executors to settle and close up my estate."

The resisting contention of the defendants is predicated upon these latter provisions. It will be noted that by the forty-ninth paragraph the testator constituted his executors final arbiters of any question of construction or meaning which should arise under his will, or any question of right or of dispute as to how much anyone is entitled to. It was also provided therein that any one of the executors should have the right to submit any question of difference between the executors to the "district court of Polk County, Iowa, and its decision shall be final." It is the contention of the defendants that, acting under the foregoing provision of the will, they have in good faith construed the same, and that their decision is adverse to the contention of the plaintiff. In support of their good faith in making such decision, they set forth the ground and theory of the same, as follows: That the will taken as a whole indicated the intent of the testator that no legacies should become absolutely due and payable until sufficient money or liquid assets had been realized from a sale of property to pay such legacies or a ratable proportion thereof; that, under the terms of the will, the executors took title to all the property of the decedent, and were required to convert the same into money as diligently as practicable, and without substantial sacrifice of values; that these requirements were conditions precedent to the payment of the legacies; that out of the proceeds of such conversion, the legacies were to be paid; that it was the expressed desire of the testator that all this should be done within a period not exceeding six years, but that this provision was precatory, and not mandatory; that, by reason of events unforeseen by decedent, it became impossible

to dispose of said property within six years without great sacrifice thereof; that a forced sale of the property within six years would have caused such a deficiency in the estate as would have made full payment of the legacies impossible, and as would have required a scaling thereof by 25 or 30 per cent; that, by refusing to sacrifice the property and by waiting for better opportunities of disposal, the executors in good faith complied, in letter and in spirit, with the directions of the will, notwithstanding their failure to do so within a period of six years.

As a further ground of their decision, they set forth that, in July, 1911, they brought a proceeding in the probate court, and served notice thereof upon the plaintiff and upon all other legatees, wherein they set forth in details all the facts pertaining to the administration of such estate, and prayed for instructions as to their future course,—whether to sacrifice the property by present sale or to await future events; that, in such proceeding, the court entered an order directing their course; that they have at all times followed such course ever since; and that the plaintiff and all other legatees have at all times acquiesced therein.

The foregoing is a sufficient statement of the record and of the contentions of the parties to enable us to proceed directly to the decisive feature of the case. That decisive question is whether the decision of the executors is final and binding upon the plaintiff of the dispute presented by it. This provision of the will is one which has been universally sustained by the courts in the comparatively few cases wherein the question has been raised. *Wait v. Huntington,* 40 Conn. 9; *Moore v. Harper,* 27 W. Va. 362, 373; *American Bd. of Com. v. Ferry,* 15 Fed. 696, 700; *Couts v. Holland,* 48 Tex. Civ. App. 476 (107 S. W. 913); *Greene v. Huntington,* 73 Conn. 106 (46 Atl. 883); *Grant v. Stephens,* (Tex. Civ. App.) 200 S. W. 893.

We will not extend this opinion by quoting from the foregoing authorities. They are all in harmony. The one qualification which is put by many of the authorities upon the exercise of such power by the executors is that it must be in good' faith. This necessarily means that the question raised must present a fair dispute. The decision may not be arbitrary. It may not contradict the clear provision of the will. In other words, the

power may not be abused. In this case, one of the executors is a residuary legatee. He has, therefore, personal interest in the dispute. If that were sufficient to disqualify him, it would avail nothing to the plaintiff, because he is only a minority, in any event. The decision made was concurred in by all the executors. There have been several successive executors, because of vacancies resulting by death and resignation. All these successive executors have concurred in the same decision.

There is also respectable authority to the effect that the residuary legatee is not thereby disqualified from exercising this function. *American Bd. of Com. v. Ferry,* 15 Fed. 696, 700. The reason for this holding is that the testator had a right to do as he would with his own, and that he had equally the right to name the same person as a residuary legatee, as executor, and as arbiter.

We have no occasion to go into the ultimate legal merits of the decision rendered by the executors. We have only to decide whether the objection raised by the defendants to the plaintiff's claim is artificial or fanciful, and whether their decision is an abuse of their power, in that it is arbitrary and contradictory to the clear terms of the will; or whether it is honest and in good faith, in that it is sustained by theory and argument reasonably plausible. We have no hesitancy in saying, upon the briefs before us, that the controversy is one which opens the door to very persuasive argument on either side. If we were to disregard wholly the provision of the will which makes the decision of the executors binding, we are not prepared to say that their contention on the merits is not tenable. That their contention is made honestly and in good faith is beyond denial. We may add that their position is fortified by one other provision of the will. This provides that any one of the executors may cause any question of difference to be submitted to the district court of Polk County, and that the decision of such court is final. They have, in effect, submitted this question to such district court, and its finding has expressly sustained their contention on its merits.

We hold, therefore, that the controversy presented was one

which the executors had power to decide. The order of the district court is, accordingly, affirmed.—*Affirmed.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.