[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 520 
Leon DeBancourt, a resident of Jackson, died testate August 13, 1929, and his will was *Page 521 
admitted to probate in Jackson county, December 4, 1929. Norbert DesNoyer was appointed executor and gave a bond in the sum of $75,000. By the order admitting the will of deceased to probate and confirming DesNoyer as executor, the executor was given one year from December 4, 1929, in which to dispose of the estate and pay the debts and legacies of deceased.
The estate of deceased inventoried $98,918.98; and at the time this case was tried, there was yet on hand $500 in cash, a $11,000 real estate mortgage on the Russo building in the city of Jackson, Book-Cadillac bonds in the par amount of $5,000, and the DeBancourt hotel building in Jackson, assessed at $20,500 — in all, assets of the par amount of $37,500.
The will of deceased contained provisions which are here involved. The tenth paragraph of the will of deceased provided:
"I hereby give, devise and bequeath to the Salvation Army located in the city and county of Jackson, Michigan, the sum of $10,000 to be used by them in the erection of their new building, said money to be paid by my executor hereinafter named when he is satisfied that the building will be completed and that the said Salvation Army will be able to finance the same."
After naming certain specific bequests, all the rest, residue and remainder of testator's property, real or personal, wherever situated, was given, devised and bequeathed to Norbert DesNoyer, Sr., of Jackson county, Michigan, as trustee, to carry into effect the provisions thereafter set forth, and the fifteenth paragraph of the will of deceased provided:
"I hereby direct that after the payment of all my just debts and legacies as above provided for by my *Page 522 
executor that all the rest, residue and remainder of my property, as above set forth, be delivered to Norbert DesNoyer, Sr., of the city and county of Jackson, Michigan, my trustee and that said trustee or his successors shall have the power to invest and reinvest the property so delivered to him, and after the expenses of administration of the said estate is paid to deliver the income from said property to my heirs dividing it among them according to the provisions, except as hereinafter stated, as to shares, as provided in the statute of distribution in force in the State of Michigan, for a period of 15 years, and at the expiration of said 15 years, or sooner if deemed advisable by my trustee, I hereby authorize and direct that my trustee or his successor sell whatever property may be on hand from my estate and reduce the same to money and divide the said proceeds and any other money belonging to my estate among my lawful heirs, except as hereinafter stated, in the proportion and according to the terms of the statute of distribution of the State of Michigan then in force. No one bearing a relationship more distant than second cousin or their heirs, shall share in the distribution of my estate or the income thereof."
Various orders were made by the probate court in the progress of the administration. Under date of July 21, 1931, an account of the executor had been filed and was on that date allowed. In the order then made, the probate court provided:
"It appearing that the bequest of $10,000 to the Salvation Army was to be used in the erection of their new building and was to be paid over by said executor when he became satisfied that the building would be completed, and the Salvation Army would be able to finance the same, and it appearing that saidbuilding has not been started at this date and that saidbequest is not therefore due and payable but should be held by said executor until the further order of the court." *Page 523 
April 13, 1932, the executor filed his final account and prayed that an order might be entered allowing such final account, and "that the residue of said estate be assigned and distributed to and among the persons entitled thereto, and for a discharge from all and further liability in the premises as such executor."
A supplemental final account was filed August 4, 1932, and the executor asked that same be allowed in connection with the account filed April 13, 1932, and "that Marie Virginie Adele Merriaux Vilmant be declared to be the sole legatee of the residue of said estate in pursuance of hearing had and proof on file, and that said estate be closed."
On the same day, August 4, 1932, the executor filed a petition in which he alleged:
"That from such investigation as your petitioner has been able to make your petitioner is not satisfied that the building will be completed or that said Salvation Army will be able to finance the same; that there is no way known to your petitioner by which the provision of the said tenth paragraph of the will can be carried out; that because of this fact and the uncertainty and indefiniteness of said tenth paragraph and the inability of the said Salvation Army to assure said petitioner that they can erect and complete said building and finance the same, your petitioner prays the court that said Salvation Army, by proper notice, be required to produce to this court proof of their ability to erect, complete and finance the said building, and upon their failure so to do and to satisfy your petitioner that the said building will be completed and properly financed, that said tenth paragraph be held for naught; that said account filed on April 13, 1932, and the supplemental account filed herewith be allowed as the final account of the petitioner and executor of said estate and your petitioner authorized and directed to turn over the residue *Page 524 
of said estate to the said sole legatee after payment of the proper charges for closing up said estate, and your petitioner to be discharged and his bond released."
The matter was brought on for hearing before the probate court upon the application of the executor for allowance of his final account and upon the petition above mentioned, and the probate court found the provision of the will was not void because of uncertainty, "that said deceased intended that said money should be paid when said building could be erected and paid for, and that said clause did not require that said executor be satisfied that said organization should subsequently be in position to maintain the building, but only wanted to be sure that the building would be erected and paid for at the time of completion."
The probate court denied the prayer of the executor that he be directed to consider the bequest to the Salvation Army void and to pay the amount thereof over to the residuary legatee, and ordered that "said executor be and he is hereby directed to make further effort to carry out the plain intent of said deceased in making provision for said organization as expressed in said will," though it is not clear what effort the executor could make.
An appeal was taken from this finding of the probate court to the circuit court for Jackson county where the matter came on to be heard, and the circuit judge found "that the probate court made a proper finding and order in the matter and that the said order and determination of the probate court should be affirmed. A judgment may enter accordingly and the said appeal certified back to the probate court for further proceedings." *Page 525 
An order in accordance with this finding was entered, and from this finding and order of the circuit court the matter comes here by appeal in the nature of a writ of error.
Some doubt has been expressed as to whether this is a proper proceeding in which to construe the will of deceased.
"The probate court, at the time of granting letters testamentary, or letters of administration, shall make an order allowing to the executor or administrator, a time for disposing of the estate, and paying the debts and legacies of the deceased person, which time shall not, in the first instance,exceed one year and six months." 3 Comp. Laws 1929, § 15694.
In this case, the order of the probate court fixing the time for disposing of the estate and paying the debts and legacies was fixed at one year from and after December 4, 1929.
A subsequent section of the statute provides:
"The probate court may, on the application of the executor or administrator, from time to time, as the circumstances of the estate may require, extend the time for paying debts and legacies not exceeding one year at a time, nor so that the whole time allowed to the original executor or administrator shall exceed ten years." 3 Comp. Laws 1929, § 15695, as amended by Act No. 108, Pub. Acts 1935.
This provision of the statute provides that such order extending the time may be made only upon the application of the executor or administrator, and, by the express terms of the statute, can only be made upon notice and hearing. 3 Comp. Laws 1929, § 15696. No such application was ever made. *Page 526 
The probate court had the jurisdiction and power to construe the will of the testator, so far as its construction was necessarily involved, in the exercise of the general jurisdiction of the probate court over the administration of estates. 69 C. J. p. 860. And the power to construe the will of the testator is involved in the power to assign the estate of a testator on the settlement of the executor's final account.Glover v. Reid, 80 Mich. 228. The question of the construction of the will of the testator was properly before the probate court and before the circuit court.
The executor of the testator's will stands in a fiduciary relation, not only to the legatees named in the will, but under the law it is equally the duty of the executor to protect the residuary legatees of the estate.
The record shows the Salvation Army intended to build a building in the city of Jackson if it could get the money. But it had at the time of the hearing no immediate prospects of getting the building up at all. The strongest testimony is that of Warden Jackson, of the Michigan State Prison, who said he felt sure "if there was such a building that it could be financed." The record shows that during the trial $6,000 was brought from the general headquarters of the Salvation Army in Chicago and deposited in a bank in Jackson. A fair reading of the record shows this money did not belong to the local unit of the Salvation Army in Jackson but was advanced only for the purposes of the lawsuit and could be drawn out and returned to the general headquarters of the Salvation Army at any time; and before the bank in Jackson was closed, the money was withdrawn and taken back to Chicago. It was a piece of legal legerdemain for the purpose of impressing the trial court. The $6,000 was no part of the building *Page 527 
fund of the local unit of the Salvation Army in the city of Jackson.
The record shows the Salvation Army in the city of Jackson has a piece of land upon which they might build a building. But it has no money for such purposes, and the question here involved is whether seven years after the death of the testator, when nothing has been done toward raising any money for the purpose of building a building in the city of Jackson for the Salvation Army and no building has ever been commenced, the executor should be directed to pay over to the Salvation Army, or whether, under the terms of the tenth paragraph of the testator's will and of the fifteenth paragraph, the executor should turn the money over to the residuary legatee. If, at the present time, the executor should turn the money over to the Salvation Army, the residuary legatee could undoubtedly hold him personally responsible for being satisfied the Salvation Army building would be completed when, as a matter of fact, it had not been commenced. The executor has no legal right to be satisfied a building will be completed by the Salvation Army when it is not commenced, and when the Salvation Army unit of the city of Jackson has no money with which to commence or finance a building. Under the plain provisions of the will in question, the executor was correct in refusing to pay over the money to the Salvation Army.
The important question is whether or not this estate, which has already been strung along without any order of the probate court extending the time for a period of seven years, is to be continued for the full statutory period of ten years, or indefinitely, in order to enable the Salvation Army to determine for itself whether it is going to take any steps toward the *Page 528 
erection of a building in the city of Jackson. I do not think that is a proper construction of the will in question. The testator had a right to rely upon the fact that his estate, under his will, would be probated in the usual and ordinary course through the probate court, and that the beneficiaries of the legacy in question would place themselves in a position so they would be entitled to the legacy within the period usually and ordinarily fixed by the probate court for the settlement of estates.
The discretion vested by the testator, by his will, in his executor is under the circumstances not subject to review by the court. So long as the executor exercises or attempts to exercise the power and discretion vested in him by the testator, it is none of the court's business. The court may interfere only in case the executor has proceeded from selfish, corrupt or improper motives. And under such circumstances the burden is not upon the executor to prove and establish the reason for his action, but is upon the legatee to prove and establish such motives. Hill on Trustees (4th Am. Ed.), star paging, p. 495; Clarke v. Parker, 19 Ves. Jr. 11 (34 Eng. Rep. 419); French v. Davidson, 3 Maddock's Ch. 205 (56 Eng. Rep. 550); Cromey v. Bull, 4 Ky. Law Rep. 787.
The order of the probate court of July 21, 1931, was a final order. It construed the will of deceased. It established the law of the case. The building had not been started at that time and it has not yet been started. The bequest is not, therefore, due and payable. It was the duty of defendant to act within a reasonable time.
When the right to a legacy is dependent upon the performance of onerous conditions imposed by the testator on the legatee, there is no presumption of the acceptance of the legacy and no acceptance in *Page 529 
fact until such conditions have been performed. The legacy to the Salvation Army could under the circumstances vest only on acceptance by the legatee. 69 C. J. p. 967; Defreese v. Lake,109 Mich. 415 (32 L.R.A. 744, 63 Am. St. Rep. 584). The legatee has given no notice of election to accept the legacy. Such action must have been taken within a reasonable time. 69 C. J. p. 972. A reasonable time will be held to have elapsed upon the running of the statute of limitations. Freeman v.Ingerson, 143 Mich. 7. At the time testator's will was executed and at the time of his death, August 13, 1929, and at the date of the filing of the petition made the basis of the order here under consideration, the statute of limitations was six years. 3 Comp. Laws 1929, § 15695. This has since been extended to ten years. Act No. 108, Pub. Acts 1935. Statutes of limitation ordinarily operate prospectively only. Hathaway v. WashingtonMilling Co., 139 Mich. 708; McKisson v. Davenport, 83 Mich. 211
(10 L.R.A. 507); Harrison v. Metz, 17 Mich. 377. The later statute, held constitutional in Re Slush's Estate,279 Mich. 19, is applicable, relating as it does to a procedural matter in a pending case in which no rights have accrued under the prior statute. It fixes the limit of time in which definite action on the part of the Salvation Army of Jackson must be taken if its rights are not to be forfeited.
The judgment of the trial court will be affirmed, and the case remanded with directions that it be closed in the probate court in accordance herewith.
FEAD, C.J., and NORTH and SHARPE, JJ., concurred with POTTER, J.