## No. 16,180.

ESTATE OF HIRSHORN.
BORGA *v.* HENDRICKSON.
(209 P. [2d] 543)

Decided July 11, 1949.   Rehearing denied September 6, 1949.

Mr. John T. Dugan, Mr. Julius Meer, for plaintiff in error.

Mary C. Griffith, for defendant in error.

Mr. Nathan I. Golden, pro se; Mr. Richard F. Ryan, for the executor of the estate of Hirshorn.

*En Banc.*

Mr. Justice Stone delivered the opinion of the court.

Hirshorn in his will provided that his one-half interest in the Algerian Club be disposed of in the following manner: He directed his executor to ascertain all bona fide employees who had worked in the club regularly for a period of not less than one year immediately prior to his death "and to all employees who have been determined by my executor to be bona fide employees of the Algerian Club for more than one year prior to my death" he bequeathed his interest. Petitioner Hendrickson sought, in the county court of the City and County of Denver by petition filed in the estate, a construction of her rights under the will, alleging that she was a bona fide employee and entitled to participate, and that the executor "has arbitrarily and capriciously extruded your petitioner as said beneficiary."

The record fails to disclose what parties, other than Borga, were joined in this proceeding, but no question

is raised as to the parties joined or sufficiency of service or as to the timeliness of this proceeding. By joining issue herein the executor admits the finality of his decision.

After determination of the matter in the county court before an outside judge sitting for the Denver County Judge, it was tried de novo on appeal, in the district court where the court made finding essentially as follows: "In my judgment the petitioner, Georgetta Hendrickson, was a bona fide employee of the Club Algerian. The evidence establishes, I think, that she had worked there regularly for a period of not less than one year prior to the death of Hyman Hirshorn." * * * "I think the county court was right in its adjudication that petitioner was entitled to share. The judgment of the county court finding that petitioner was one of the employees mentioned in the will * * * is affirmed * * *. Then I find the issues joined in favor of the petitioner and against the respondents and render judgment in her favor."

■ The important thing which the court seems to have overlooked is that Hirshorn did not bequeath his interest to the bona fide employees who had worked in the club regularly for a period of not less than one year. In such case the judgment of the court as to who were such employees should prevail. What he did do was to direct his executor to ascertain such bona fide employees and to bequeath his interest "to all employees who have been determined by my executor to be bona fide employees." The issue tendered by the petition was not whether in the judgment of the court petitioner was an employee, but whether the executor "has arbitrarily and capriciously extruded your petitioner as said beneficiary." Under such testamentary provision, it is the judgment of the executor and not the judgment of the court which must prevail.

*American Board of Com'rs of Foreign Missions v. Ferry, Ex'r.*, 15 Fed. 696, was a suit by beneficiaries

against the executor for construction of the amount of a legacy. The will provided that in case of any doubt or uncertainty touching any matter contained in the will the existing male executor should act as umpire and his determination and decision should be accepted as final. Upon dispute as to interpretation of the will the court found such designation not unreasonable and said: "The rule, as we conceive it, is, when an arbiter honestly and in good faith exercises his power and passes upon a doubtful question, either of law or of fact, his decision will not be revised by a court, notwithstanding the court, whose interposition is invoked, may think his decision erroneous. As a rule the courts will not interpose to correct a mere mistake in the judgment of an arbitrator. But if the arbitrator refuses to act, awards upon a matter not submitted, makes an incomplete determination, or commits a gross mistake or error of judgment, evincing partiality, corruption, or prejudice, transcends his authority or violates some statutory requirement on which the dissatisfied party had a right to rely, or commit some other like error, courts of equity may interfere and correct the error." The court further said that there, "the decision made, if erroneous, is not so manifestly wrong as to evince prejudice, partiality, or corruption."

*Wait et al., Executors v. Huntington,* 40 Conn. 9 (1873), was an action by an executor for advice as to the construction of a will. The will provided that should any questions arise as to the meaning of the instrument, the distribution of the estate should be made "to such persons and associations as my executors shall determine to be my intended legatees and devisees, and their construction of my will shall be binding upon all parties interested." The court determined: "That it was the clear wish of the testator that the executors of his will should be a domestic tribunal to settle the meaning and legal construction of the instrument;" that the interest of the executors having been known to the testator

would not disqualify them, and that under the power conferred upon them their construction of the will would be binding upon the beneficiaries, except in case of clear abuse of their power, in the event of a bona fide question and in the absence of arbitrary action.

*Talladega College v. Callanan*, 197 Ia. 556, 197 N.W. 635, was a proceeding by a legatee against executors to construe a will. Testator constituted his executors as final arbiters to determine the meaning of his will and the amount due a legatee. The court said the decisive feature of the case was "whether the decision of the executors is final and binding upon the plaintiff of the dispute presented by it;" that, "This provision of the will is one which has been universally sustained by the courts in the comparatively few cases wherein the question has been raised," and that the court had only to decide whether the decision of the executors was "an abuse of their power, in that it is arbitrary and contradictory to the clear terms of the will; or whether it is honest and in good faith, in that it is sustained by theory and argument reasonably plausible."

*Buchar's Estate*, 225 Pa. 427, 74 Atl. 237, was an appeal by an executrix from the auditor's report. Testator devised an interest to his son at such time when the executors or survivors of them should decide that in their judgment he was competent morally to have control of it. On the evidence submitted, the trial court found that the decision of the executrix "was not an honest exercise of such discretion, but rather from caprice, ill will and in wanton disregard of the interests" of the testator, and this was affirmed on appeal.

*In re DeBancourt's Estate*, 279 Mich. 518, 272 N.W. 891, 110 A.L.R. 1346, was an appeal by an executor and residuary legatee from order entered on final accounting. The court said: "The discretion vested by the testator, by his will, in his executor is under the circumstances not subject to review by the court. So long as

the executor exercises or attempts to exercise the power and discretion vested in him by the testator, it is none of the court's business. The court may interfere only in case the executor has proceeded from selfish, corrupt, or improper motives. And under such circumstances the burden is not upon the executor to prove and establish the reason for his action, but is upon the legatee to prove and establish such motives."

*National Metropolitan Bank v. Joseph Gawler's Sons, Inc.,* 168 F. (2d) 571, United States Court of Appeals, District of Columbia, was an action against executors. The court said, "The testator left the matter to their discretion. Therefore, their action must stand unless arbitrary or abusive. Only in such circumstances has a court power to interfere. [citing cases]. Nor was the burden upon the executors to establish good faith and sound discretionary action. He who attacks must prove the charge."

In 21 Am. Jur., p. 492, §213, is the following: "The reason for this hesitancy on the part of the court to interfere is that the testator has a right to dispose of his property as he pleases, and he may subject all, or any part, of it to the discretion of his executor or trustee. This discretion, properly exercised, will not be interfered with by the courts. Where the power given to an executor to do, or not to do, a particular thing is wholly discretionary, the court has no jurisdiction to lay a command or prohibition upon him as to the exercise of that power, provided his conduct is bona fide and his determination is not influenced by improper motives."

The rule above enunciated seems to have been universally followed, as we have found no authority to the contrary. Accordingly, the question involved here is not whether in the judgment of the court petitioner should have been included, but whether the action of the executor in excluding her was arbitrary and capricious. That this was understood by petitioner's counsel is evidenced from the petition in which is tendered the one

issue that the executor "has arbitrarily and capriciously extruded your petitioner as said beneficiary."

In considering this issue, — that the executor has arbitrarily and capriciously excluded petitioner as beneficiary: 1. The presumption is that the executor acted fairly, and the burden of proof is upon petitioner. *National Metropolitan Bank v. Joseph Gawler's Sons, Inc., supra; In re DeBancourt's Estate, supra.* 2. The conclusion as to arbitrary and capricious action must necessarily be determined, not from the evidence now submitted to the court, but from the facts known or called to the attention of the executor. Here the executor was not even called as a witness to testify as to the reasons for his decision, nor was any showing made as to why he was not called or as to what facts, if any, he considered or refused to consider or of any further evidence he should consider in making his decision. 3. If we assume that, by reason of the failure of the executor to take the stand voluntarily and testify as to the reason for his decision, he must be considered as accepting the evidence introduced at the trial as constituting the evidence upon which he made his decision, still, in order for petitioner to prevail, the evidence must with such certainty contradict the determination of the executor as to convince the court that there was not merely a mistake of judgment on his part, but arbitrary action without basis of reason.

4. In the case before us there is no such positive, certain and convincing evidence. Here, the testimony in substance was as follows:

Hirshorn's partner testified as a witness for petitioner that Hirshorn died March 5, 1946; that the club was closed on account of damage from fire in latter March or early April, 1945, and was again opened the first of August; that petitioner was then employed elsewhere and did not return to work until October; that she worked from then until sometime in January, at which time she quit; that she was employed as hat check girl

and her compensation consisted of one-half of the tips she received, and as such was not under social security; that at the time Mr. Hirshorn died she was not working there in any capacity and had not been for a period of two months; that when she quit work in January "she told me her husband didn't want her to work any more. Besides, she was not feeling well, either, and she wants to give the job up;" that she did not work thereafter until about September following Hirshorn's death. Petitioner's husband testified that she returned to work on September 9, 1945, after having remained at home through August and until then, because of his return from the service, and that she was then employed there "until about the middle of February." It is undisputed that she did not work through the month of August or until the 9th of September, except for two Saturday nights, and that she did not work from the middle of February until after Hirshorn's death. Petitioner, whose testimony was received only concerning matters subsequent to the death of Hirshorn, testified that after Hirshorn's death "I worked extra, more or less, right after he died. In March I worked several nights for the girl who had taken my place, then I went to work the middle of April and worked steady." Her own testimony, that she returned to work as an extra following Hirshorn's death, is not very convincing that she worked there regularly for a period of not less than one year immediately prior to his death.

This uncertain and conflicting testimony makes decision difficult. It involves interpretation of the word "regularly." In the words of the Iowa court, in *Talladega College v. Callanan, supra,* there is "theory and argument reasonably plausible" to support the finding of the court that petitioner had worked regularly and been a bona fide employee for more than one year prior to Hirshorn's death, and there is "theory and argument reasonably plausible" to support the finding of the executor to the contrary. It is certainly not so plain and

302

convincing as to justify a finding of bad faith, improper motive or arbitrary action on the part of either, and such finding is essential to petitioner's claim.

5. The court made no finding that the action of the executor was arbitrary and capricious. The record shows that no such finding was made by the county court and the finding of the district court was that, "*In my judgment* the petitioner * * * was a bona fide employee * * *. The evidence establishes, I think, that she had worked there regularly * * *. The judgment of the county court finding that petitioner *was one of the employees* * * * was right * * * and * * * is affirmed."

■■ Stress is laid by the trial court on the fact that shortly after Hirshorn's death his partner brought action for dissolution of partnership, confirmation of sale of the club and declaratory judgment, in which he included petitioner Hendrickson as a defendant, alleging that to the best of plaintiff's knowledge, information and belief and according to the payroll records of the club she was among those entitled to take as beneficiaries. It is difficult to find any probative force in such evidence. (1) The plaintiff in that action was not the executor, and evidence of the opinion of another person as to who were beneficiaries was incompetent and not properly admissible on the issue of the executor's good faith; (2) the partner testified that his attorneys, not he, determined who should be joined as defendants in that action; and (3) such an action is in the nature of an action to determine interests in property, wherein a cautious attorney would join as defendants all who might have even a remote claim to an interest, without passing judgment thereby on the merits of such claim.

Accordingly, the judgment is reversed and the cause remanded with instructions to dismiss the petition.

MR. CHIEF JUSTICE HILLIARD, MR. JUSTICE HAYS and MR. JUSTICE HOLLAND dissent.

Mr. Justice Hays dissenting.

For reasons hereinafter stated, I dissent from the majority opinion.

In construing our rule 15 (b) we have held that in the absence of motions or objections any issue which the parties see fit to present may be considered and determined by the trial court, and that the pleadings become functus officio. *Carlson v. Bain,* 116 Colo. 526, 182 P. (2d) 909; *Scheller v. Mawson,* 117 Colo. 201, 185 P. (2d) 1009; *Toy v. Rogers,* 114 Colo. 432, 165 P. (2d) 1017; see, also, address of Mr. Thomas Keely of Denver Bar appearing in volume 1, '35 C.S.A., pp. 449, 461. During the course of the trial Mr. Dugan, counsel for plaintiff in error, expressly stated: "The sole question is, whether she [claimant] was employed for a year prior to his [Hirshorn's] death." A careful examination of the record convinces me that the case was tried both in the county and district courts upon the above theory and no objection was made by plaintiff in error to such course of trial.

Counsel for plaintiff in error in the preparation of the specifications of points upon which they rely for reversal of the trial court's judgment must have had before them our rule number 111 (f) which provides with respect to specification of points that, "Each such specification shall set out separately and particularly, each point relied upon * * *," and that " * * * counsel shall be confined to the points so specified but the court may in its discretion notice any error appearing of record." Construing the above rule we have held that the only questions before this court are those raised by such specification of points. *Stanton v. Union Oil Co.,* 111 Colo. 414, 142 P. (2d) 285.

In the specification of points which counsel for plaintiff in error claim justifies a reversal of the trial court's judgment, they allege that "there is manifest error in the record and proceedings of this cause * * * in the

following particulars: * * * ' 3. That the trial court erred in holding and finding that the petitioner herein was a bona fide employee of the Algerian Club for more than (1) year prior to the date of the death of the said H. Hirshorn."

Accordingly, the error, which the trial court is alleged in the specifications to have committed, is in finding as a fact that "petitioner herein was a bona fide employee of the Algerian Club * * *," and not that the court was without right or authority to determine such question, which is the basis for the majority opinion. In the absence of. proper objections in the trial court and appropriate specifications here, the above question, as I view it, is not before this court. It is manifestly unfair to defendant in error to reverse the judgment of two courts in her favor, upon a theory not presented in the trial court nor specified here as error.

MR. CHIEF JUSTICE HILLIARD concurs in this dissent.

MR. JUSTICE HOLLAND dissenting.

Firm in the belief that the rule followed in the majority opinion does not apply to the will here involved, I dissent.

It is most likely, and dangerously so, that the effect of the ruling as announced in the opinion would take too many of the decisions made by executors out of the control of the probate court. In all the cases cited in the majority opinion, in support of the ruling, the will involved gave the executor undeniable and complete discretion as I will later demonstrate.

Before us is paragraph 21 of Hirshorn's will in the following words:

"21. As to my one-half interest in the Algerian Club, which is represented by a co-partnership agreement between one Jack Kanner and myself, I direct that my interests in said Club be disposed of in the following manner:

"I direct my said executor, hereinafter named, to as-

certain all bona fide employees of the said Algerian Club (excluding Jack Kanner), who have worked there regularly for a period of not less than one (1) year immediately prior to my death, and to all employees who have been determined by my said executor to be bona fide employees of the Algerian Club for more than one (1) year prior to my death, I give and bequeath all my said right, title and interest in and to the Algerian Club, share and share alike, subject to the restriction that no such employee may sell, pledge or otherwise dispose of his or her interest in said Club prior to the expiration of two (2) years after my death. However, if any employee violates this direction not to sell or pledge his or her share, then such share shall be divided among the other employees who take under the terms of this will. The employees who become beneficiaries of this Will are further directed by me to immediately select one of their number to act as spokesman for them and as co-manager of the Algerian Club."

This lays bare an unequivocal *direction* and not *discretion*. The executor was *directed* to ascertain, that is, make certain by examination, *all* bona fide employees who have worked there regularly for a period of not less than one year. To ascertain who were such employees depended upon *the facts* that existed, and not on the judgment or discretion of the executor, and no place in the will did the testator say, "use his judgment," or that his judgment would be "final, controlling or conclusive," as is to be found in wills in the cases cited in the majority opinion as supporting the rule followed, as I will later set out.

This wording of the will before us contemplates that *each and every one* who had regular employment for at least a year before the death of the testator, would share in his beneficence. Whenever any employee could establish such employment, his right to share could not be denied, whether erroneously, arbitrarily or capriciously.

The claimant here is not an interloper, but is brought

into the controversy by reason of recognized and admitted employment, and more forcibly so by the recorded actions of the executor himself, when he included her as a beneficial employee in the petition for probate of the will, again when he caused citation to attend probate to be served upon her, and also when he included her in the publication of notice. Without notice, he unceremoniously changed his mind and excluded her.

After so being made a party, if she found herself injured or denied her rights by the executor by excluding her from the benefits under the will, whether capriciously or otherwise, she certainly was entitled to have the question of fact about her employment determined by the court. The *facts* upon which the executor was bound by the will to act, were determined in her favor by two courts of unquestioned ability and integrity. The executor was a party to both proceedings and he, as well as this court, is bound by the findings of fact on competent evidence. If he was wrong, claimant was entitled to have the court tell him so. If, as the findings of the county court and the district court disclose, claimant was and is entitled to share in the estate under the above provision of the will, then the denial of her right to so share by the executor had to be held erroneous or arbitrary, and the finding of the two courts sustained the allegation of the petition that the executor acted arbitrarily and capriciously, without expressly so stating in the findings, which was not necessary under the facts before both courts. As before stated, the findings, in effect, show that the executor was either arbitrary or capricious or was mistaken in his construction of the facts.

The executor appeared at both hearings and participated through counsel in the proceedings to determine whether claimant came within the provisions of the will or not, and never raised the question, or suggested to the court, that the will gave him complete discretion in

determining who were such employees, and he offered no resistance to claimant on that ground. Claimant assumed, and carried the burden, of showing that his actions were arbitrary or capricious when she clearly established her right to participate under the will.

Credit of sincerity is due the executor for asking the county court, in his petition filed therein, to construe the will and the testator's language concerning bona fide employees of the Algerian Club, stating in his petition, "That in his opinion, the language with reference to the determination by the executor of all bona fide employees of the Algerian Club is not clear and this executor is in doubt as to his duty with relation thereto." He then prays, "That the Court construe the will and the testator's language concerning bona fide employees * * * and make a determination thereof."

If the will gave the executor such carte blanche power and discretion as the majority opinion says he has, it would have to be in such clear and unmistakable language as to leave no doubt in the mind of the executor that he had such discretion and there would have been no occasion for him to file such a petition.

Contrary to the statement in the majority opinion that "The important thing which the court seems to have overlooked is that Hirshorn did not bequeath his interest to the bona fide employees who had worked in the club regularly for a period of not less than one year," in my opinion, he did, and he directed the executor to find out who they were. On this question, the executor was in doubt and participated in a hearing before two courts on that question. However, the court in the majority opinion says that the judgment of the executor, and not the judgment of the court, prevailed. Where does the will even mention judgment of the executor?

On page six of the majority opinion, it is stated "The rule above enunciated seems to have been universally

followed, as we have found no authority to the contrary." In the case of *Talladega College v. Callanan,* 197 Ia. 556, 197 N. W. 635, cited in the opinion, it is stated: "That decisive question is whether the decision of the executors is final and binding upon the plaintiff of the dispute presented by it. This provision of the will is one which has been universally sustained·by the courts in the *comparatively few cases* wherein the question has been raised."

I am not in accord with paragraph numbered 3 on page seven of the opinion wherein it is stated: "* * * in order for petitioner to prevail, the evidence must with such certainty contradict the determination of the executor as to convince the court that there was .not merely a mistake of judgment on his part, but arbitrary action without basis of reason." This is tantamount to saying that if the executor made a mistake in judgment, thereby giving claimant the right to participate under the will, and such mistake is sufficiently established by the evidence to base a finding such as two courts did in this case, then the claimant would still not be permitted to take under the will, but would have to go beyond that and show arbitrary action. I do not believe that such can be the law because of the clear direction that claimant would benefit if she qualified as an employee.

I will now set out pertinent parts of the wills in all cases cited in the opinion commencing with *American Board of Com's of Foreign Missions v. Ferry,* 15 Fed. 696, in which paragraph twelve of the will there involved was as follows: "Be it distinctly understood by all concerned that every word and sentence herein is strictly my own; and I hereby determine and direct, furthermore, that in case any doubt or uncertainty arise touching any matter or thing contained or supposed to be contained in the foregoing, he, the existing male executor, shall act as umpire, and his determination and

decision over his signature attached to this will, shall, in all respects, be accepted as final." Unlike the will before us, in this case, the testator made clear that in case of any doubt, the determination of the executor would be final. There is no such wording in the Hirshorn will.

In *Wait, et al., Executors v. Huntington,* 40 Conn. 1, "Should any informality appear or questions arise as to the meaning or legal construction of this instrument, I hereby direct that the distribution of my estate shall be made to such persons and associations as my executors shall determine to be my intended legatees and devisees, and *their construction of my* will shall be binding *upon all parties interested.*" Quite different to the Hirshorn will.

In *Talladega College v. Callanan, supra,* also cited as supporting the rule, in paragraph 49 of the will in that case, is the following language: " * * *and if any question of construction or meaning shall arise under this will, or any question of right or of dispute shall arise as to how much anyone is entitled to, I direct that the decision of a majority of my said executors on any such point shall be final." No power of final decision is given the executor in the will before us.

In another case cited, *Buchar's Estate,* 225 Pa. 427, 74 Atl. 237, the following is to be found in the will: "* * * unto my son, Charles E. Buchar, at such time and when my executors, or survivors of them *shall decide that in their judgment,* he is competent morally to have control of the same." The Hirshorn will does not permit the use of the executor's judgment as final as in the case last quoted.

In another case relied upon to support the opinion, *In re DeBancourt's Estate,* 279 Mich. 518, 272 N. W. 891, is found the following: "I hereby give, devise and bequeath to the Salvation Army located in the City and County of Jackson, Michigan, the sum of Ten Thousand Dol-

lars to be used by them in the erection of their new building, said money to be paid by my executor hereinafter named *when he is satisfied* that the building will be completed and that the said Salvation Army will be able to finance the same." This is quite different authority to that given by Hirshorn in the case before us.

The last case cited in the opinion in support of the rule is *National Metropolitan Bank v. Joseph Gawler's Sons, Inc.,* 168 F. (2d) 571, and the case turns on the following provision in the will, the executors were directed "to pay decedent's just debts and the expenses of his last illness, 'funeral and burial' in such sums as *they may deem proper."*

The writer of the court opinion cites the text in 21 American Jurisprudence, page 492, section 213, wherein it is said, "The reason for this hesitancy on the part of the court to interfere is that the testator has a right to dispose of his property as he pleases, and he may *subject all, or any part, of it to the discretion* of his executor or trustee. This discretion, properly exercised, will not be interfered with by the courts. Where the power given to an executor to do, or not to do, a particular thing is wholly discretionary, the court has no jurisdiction to lay a command or prohibition upon him as to the exercise of that power, provided his conduct is bona fide." This text undoubtedly states the rule in the few reported cases where it is disclosed by the wills involved that discretion was specifically intended to be given by the testator to the executor and was so given by the varied expressions in the different wills. I have no quarrel with such a rule under the circumstances of these cases, but I do believe that it cannot be logically contended that any such discretion is given the executor in the case before us.

Let us hope that the majority opinion herein will not be freely accepted as authority for executors to feel that their judgment must prevail over that of the pro-

bate court in cases where the will gives no clearer right to such discretionary power than that in the will before us.

For these reasons, I think the judgment of the district court should be affirmed.

I am authorized to state that MR. CHIEF JUSTICE HILLIARD concurs in this opinion.